# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO GONZALES,<br><br>    Plaintiff,<br><br>v.<br><br>BILL RUTLEDGE, et al.,<br><br>    Defendants. | 1:17-cv-00387-LJO-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION<br><br>FOURTEEN-DAY DEADLINE |

## **Findings and Recommendations**

### I. Background

Plaintiff Gerardo Gonzales ("Plaintiff"), proceeding pro se, initiated this civil rights action on March 16, 2017. (ECF No. 1.) On May 2, 2017, the Court denied Plaintiff's application to proceed in forma pauperis and required him to pay the filing fee in full for this action. (ECF No. 8.) On May 4, 2017, Plaintiff paid the filing fee.

On August 9, 2017, Plaintiff filed a document with the Court entitled "Legal Letter for the Court to Take Judicial Notice; Request for Immediate Action by this Court due to Medical and Psychological Harm to Plaintiff; Order for Protection and Legal Questions." (ECF No. 9.)

Plaintiff's complaint is currently before the Court for screening.

### **Screening Requirement**

The Court is required to screen complaints brought by persons proceeding in pro per. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is

1

frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121-1123 (9th Cir. 2012), Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), but to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Moss, 572 F.3d at 969.

## II. Allegations in Complaint

Plaintiff brings this action against more than fifty defendants, including employees of the Kern County Human Services Department, the Kern County District Attorney's Office, the Kern County Sheriff's Department, the Kern County Superior Court, and the various field offices of the FBI located in Bakersfield, Fresno and Sacramento. (ECF No. 1 at pp. 2-3.)

Plaintiff forwards 12 separate claims for violation of his constitutional rights, all of which stem from an apparent investigation into allegations of child molestation against him and a subsequent criminal action. Plaintiff alleges that defendants conspired to file false allegations of

child molestation against him, resulting in, among other things, false arrests, false imprisonment and a no contest plea in violation of his constitutional rights.

In his first claim, Plaintiff alleges that on June 26, 1984, Cory Taylor, an employee of Kern County Human Services, formed a conspiracy with Janet F. Hastings, Brooke A. Hastings and Bob Hastings to file false allegations of child molestation against him. Plaintiff asserts that he entitled to declaratory stating that he is innocent of any and all charges filed by these parties. (ECF No. 1 at p. 10.) Plaintiff further alleges that he suffered defamatory damage, loss of work/income, and emotional distress. He also lost him home and belongings and spent 2 ½ years in Kern County Jail due to defendants actions. (Id.)

In his second claim, Plaintiff alleges that Cory Taylor, Bill Rutledge, W.S. Wahl and other Kern County Employees conspired to arrest him without any investigation or warrants. Plaintiff contends that the sole purpose was to remove Melissa Gonzales and Tyson Gonzales from their home and coerce them into making false allegations against him.

In his third claim for relief, Plaintiff alleges that before June 26, 1984, Cory Taylor and Janet F. Hastings conspired to convince Brooke A. Hastings to make false allegations. Plaintiff asserts that he later found out that Cory Taylor and Janet F. Hastings were best friends since high school. They allegedly had no experience or training in knowing the signs of child molestation. Plaintiff further asserts that the actions of Cory Taylor and Janet F. Hastings caused him to be illegally arrested, illegally incarcerated, lose property/money, suffer emotional distress and defamatory damage, and temporarily lose parental rights and custody of his children.

In his fourth claim, Plaintiff alleges that on June 26, 1984, Kern County Sheriff's Deputies Bill Rutledge and W.S. Wahl joined in the conspiracy with Cory Taylor, Janet F. Hastings and Brooke A. Hastings and falsely arrested Plaintiff without probable cause and without an arrest warrant. They also searched the premises without Plaintiff's consent.

In his fifth claim, Plaintiff alleges that on June 27 or 28, 1984, he was released from jail because further investigation was needed. Plaintiff claims that defendants, including the Kern County Sheriff's Department, Kern County District Attorney's Office and Kern County court system have failed to produce the investigation reports. The next day, on June 28 or 29, 1984,

Bill Rutledge rearrested Plaintiff and refused to let Plaintiff see the warrant. Plaintiff contends that to date Kern County has not produced the warrant. Plaintiff further alleges that Bill Rutledge, Human Services, the District Attorney's office and even Kern County judges have joined in the conspiracy to violate Plaintiff's constitutional rights and have ratified the acts.

In his sixth claim, Plaintiff alleges that he was illegally in custody from June 29, 1984 to July 5, 1984, at which time he posted bail. Plaintiff and his wife then attempted to file grievances with the Department of Human Services, the Kern County Sheriff's Department, and the Kern County District Attorney. They also went to speak to a Congressman and Assemblyman in Bakersfield, California in order to file complaints against all Kern County employees involved in Plaintiff's case. Additionally, Plaintiff's wife went to Sacramento and filed a criminal complaint with the California Attorney General. Within 48 to 72 hours after Plaintiff's wife returned from filing the complaint, Bill Rutledge and Cory Taylor were in Plaintiff's neighborhood looking for more alleged victims. On August 31, 1984, Bill Rutledge rearrested Plaintiff for multiple counts of child molestation, and Plaintiff's wife also was charged. While being transported to Kern County Jail, Bill Rutledge asked Plaintiff if he and his wife were going to keep filing complaints. Plaintiff asserts that Kern County and the California Judicial System joined in the conspiracy to deny Plaintiff and his family their constitutional rights.

In his seventh claim, Plaintiff alleges that O.C. Stiles and the Human Services department failed to protect his children, Melissa Gonzales and Tyson Gonzales. Plaintiff also alleges that Cory Taylor was allowed to coerce, brainwash and intimidate Melissa and Tyson Gonzales into making false allegations against Plaintiff. Plaintiff asserts that from June 26, 1984 to December 1, 1988, O.C. Stiles (Director of Human Services), Larry Klier (Kern County Sheriff) and Ed Jagels (Kern County District Attorney allowed employees to form a conspiracy with the sole purpose and intention to make sure that Plaintiff was convicted of child molestation. Plaintiff asserts that certain conduct of defendants shock the conscience. This conduct includes the following: (1) multiple false charges/allegations filed against him from June 26, 1984 to December 1, 1988; (2) multiple false arrests against Plaintiff from June 26, 1984 to August 31,

1984 with no probable cause; (3) failure to commence an investigation before arresting Plaintiff on June 26, 1984; (4) failure to provide an arrest warrant on June 28 or 29, 1984; (5) failure to the judicial system to protect his children from Cory Taylor and Bill Rutledge and for assigning Susan Skabelund and County Counsel as attorneys for Plaintiff's children; (6) failure of Sheriff Larry Klier to control deputies from coercing, brainwashing and intimidating his children, ages 6 and 4; (7) knowing participation by all defendants and agencies, including superior court judges; (8) hiding, altering or planting evidence by all agencies and defendants, with superior court judges covering for violations; (9) Attorney General John Van De Camp hiding all constitutional violations committed by Ed Jagels and/or the Kern County District Attorney's Office; (9) willful cover-up of constitutional violations by all defendants, government agencies, including all agency heads, judges and the California Attorney General's Office.[1]

In his eighth claim, Plaintiff alleges that on August 31, 1984, after his third illegal arrest by Bill Rutledge, the Kern County judicial system, from district attorneys to judges, joined in a conspiracy to keep Plaintiff from seeing his wife or children. Plaintiff's bail was increased from $50,000 to $1,000,000, despite defendants knowing that he had been out on $50,000 bail for over seven weeks and had continued to work at his same job. Plaintiff made multiple attempts at bail reduction with no success. Plaintiff alleges that this conspiracy by all defendants was to keep Plaintiff and his wife from filing grievances with the government. Plaintiff further alleges that the training policies and supervision of Kern County, including its Human Services Department, Sheriff's Department, District Attorney's Office and foster parents, were not adequate.

---

[1] Plaintiff's complaint also includes a request for judicial notice. (ECF No. 1 at pp. 18-23.) In relevant part, Plaintiff asks the Court to take judicial notice of certain allegations, including the following: (1) that between 1980 and 1990, Human Services, the Kern County Sheriff's Department and the Kern County District Attorney's Office filed seven to nine molestation cases, known as "Ring Cases," in which multiple citizens were charged with allegedly molesting multiple children; (2) with the exception of Cory Taylor, Bill Rutledge and the reporting party, the remaining authorities involved in the investigation and prosecution of Plaintiff's case were the same persons; (3) on August 1, 1985, the foreman of the Kern County Grand Jury requested that the California Attorney General conduct an investigation into the way that the Kern County judicial system was handling Plaintiff's case and others; and (4) certain contents from the Attorney General's report of the investigation. In the absence of any supporting documentation, the Court declines to take judicial notice of this information. Fed. R. Evid. 201(b) ("court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

In his ninth claim, Plaintiff seeks relief against Kern County for unconstitutional policies, including not providing required training and supervision, not providing protection for Plaintiff's children, retaining employees that had dangerous propensities for abusing their duty or authority, failing to discipline employees for misconduct, ratifying intentional conduct, encouraging and facilitating a cover-up in which County employees do not report other employees' misconduct or crimes.

In his tenth claim, Plaintiff alleges that he was held in Kern County facilities from June 1984 to January 1987 without a trial. In December 1986, Kern County was preparing to prosecute Plaintiff, his wife and Reverend Willard Thomas on hundreds of counts of child molestation, just as the County had in at least 7 other "Ring Cases" with 100% conviction rate. Plaintiff was given a pretrial offer of 900 years in lieu of proceeding to trial. Plaintiff refused the offer. During jury selection, Plaintiff's attorney notified him that the offer had been lowered to pleading guilty on one court for 8 years. Plaintiff again refused. The offer continued to change during jury selection until the offer was "no contest on one count, for time served." (ECF No. 1 at p. 30.) Plaintiff again refused. However, Judge Clarence Westra had found against Plaintiff in juvenile court and had removed legal custody of both children from Plaintiff and his wife. Kern County also offered "no contest one count, no factual finding of facts, time served," all three defendants go home, all charges will be dropped against the other defendants, and proceedings starting immediately to recover custody. (Id.) Plaintiff initially refused the offer, but the judge permitted Plaintiff, his wife, and several friends to meet in the judge's chambers alone and without supervision. After 4-5 hours, Plaintiff relented and agreed. Plaintiff accepted the deal, but alleges that at sentencing in January 1987, Kern County changed the deal and allowed the judge to make findings of fact. Plaintiff alleges that he was forced into the illegally altered deal under duress. Plaintiff further alleges that he continues to suffer yearly registration for something that was a lie, and never happened.

In his eleventh claim, Plaintiff alleges that in December 1986 he was released from Kern County jail under the altered plea bargain. Even though proceedings were filed to have the

children reunited with Plaintiff and his wife, it would be years before his daughter would be fully returned because Kern County was using her as a piece of evidence in other actions.

In his twelfth claim, Plaintiff alleges that under the altered plea, he was to register under PC 290 and would not have to contact authorities unless he changed addresses. In 1994, a new law was enacted as Megan's Law, and was made active in 1996. The law was retroactive and required even a person with a no contest plea to contact authorities every year and re-register under PC 290. Plaintiff has to report to the Bakersfield Police Department on or about September 28 of every year.

Plaintiff also alleges that Kern County is still joined in a conspiracy to violate his rights. In 2014 or 2015, Plaintiff hired an attorney to file a "Writ of Coram Nobis" to clear his name. The Writ was filed in Kern County and assigned to Judge John Lua. Plaintiff alleges that Judge Lua joined in a conspiracy to deny his constitutional rights and to protect Kern County from having to produce documents containing exculpatory evidence. Judge Lua also allegedly rejected motions filed by Plaintiff and his attorney and prevented Plaintiff from presenting witnesses in his favor in open court. Judge Lua reportedly denied the writ, resulting in Plaintiff filing an appeal with the Fifth District Court of Appeals. Finally, Plaintiff alleges that he has contacted several offices of the FBI, but all offices refused to file or record Plaintiff's complaints.

As relief for these claims, Plaintiff appears to seek a declaration that "he was and continues to be innocent of all allegations filed on 06/26/1983; And all continuing false allegation made between June 1984-1987." (ECF No. 1 at p. 39.)

**III.     Discussion**

Insofar as Plaintiff is challenging his state court criminal conviction, Plaintiff's claims must be dismissed. Federal district courts lack appellate jurisdiction over a state court, whether by direct appeal or otherwise. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). Further, in Heck v. Humphrey, 512 U.S. 477, 486–87 (1984), the United States Supreme Court held that in order to recover damages under § 1983 for an allegedly unconstitutional conviction or imprisonment, or

for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. A § 1983 action is barred under Heck if a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence." Id. at 487. Although Heck involved a claim for damages, the Supreme Court has extended its application to damages and declaratory relief, such as that sought by Plaintiff. See Edwards v. Balisok, 520 U.S. 641, 648 (1997) (applying Heck bar to claims for declaratory relief and money damages).

Here, Plaintiff's assertions of wrongful arrests, false imprisonment, malicious prosecution, and a conspiracy among Kern County employees and individuals to bring false charges against him would necessarily imply the invalidity of his conviction following a no contest plea. See e.g. Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006) (Heck bar applied to claims of wrongful arrest, malicious prosecution, and conspiracy among officials to bring false charges). Given Plaintiff's current request for a declaration of innocence and the denial of his writ, Plaintiff cannot otherwise demonstrate that his conviction has been reversed, expunged, invalidated or called into question by a writ of habeas corpus. The fact that Plaintiff is no longer in custody and cannot overturn his prior conviction by means of habeas corpus does not lift Heck's bar. Id. at 704–05; El v. Crain, 560 F.Supp.2d 932, 944-45 (C.D. Cal. 2008) (exception to Heck bar for non-custodial plaintiffs limited to (1) former prisoners challenging loss of good-time credits, revocation of parole or similar matters, not collaterally challenging underlying criminal convictions, and (2) who diligently pursued expeditious litigation to challenge those punishments to the extent possible), vacated in part on other grounds Ra El v. Crain, 399 F. App'x 180 (9th Cir. 2010).

Even if the Heck bar does not apply, however, Plaintiff's claims are time-barred.[2] The relevant statute of limitations for a 42 U.S.C. § 1983 claims is the forum state's statute of

---

[2] While not entirely clear, Plaintiff also appears to be seeking relief arising out of an alleged conspiracy regarding his writ of coram nobis, which was filed in 2014 or 2015, and is currently on appeal in the state appellate

8

limitations for personal injury actions. Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999); see also Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (noting California's two-year statute of limitations for personal injury actions applies to § 1983 claims). The California statute of limitations for personal injury claims is two years. Cal. Civ. Proc. Code § 335.1. Although California law determines the limitations period, federal law determines when a civil rights claim accrues. Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 926 (9th Cir. 2004). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (quoting TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)).

Here, the acts and omissions allegedly committed by the defendants occurred between 1984 and 1988. See ECF No. 1 at pp. 15, 16. However, Plaintiff did not file this action until March 16, 2017, which is nearly thirty years after the last act alleged in the complaint. Thus, Plaintiff's claims are barred by the relevant statute of limitations. Plaintiff suggests that his claims are not so barred because he is required to register as a sex offender each year. Despite this suggestion, Plaintiff admits that such a requirement came into effect in 1996, which is more than twenty years before Plaintiff initiated this action. Id. at pp. 33-34. Plaintiff does not explain the delay.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1. Plaintiff's complaint be dismissed for failure to state a cognizable claim for relief; and

2. All pending motions or other requests for relief be denied as moot.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

---

court. Even if such a claim were timely, this Court must abstain from interfering with the ongoing state action, whether criminal or civil, absent exceptional circumstances, which are not alleged. See Trainor v. Hernandez, 431 U.S. 434, 444 (1977) (civil); Younger v. Harris, 401 U.S. 37, 41 (1971) (criminal).

9

Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 29, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE